1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   MARILYN MEYERS, o/b/o K.M.,

11                  Plaintiff,                     CASE NO.    C06-5399RBL-KLS

12        v.                                       REPORT AND
                                                   RECOMMENDATION
13   JO ANNE B. BARNHART, Commissioner of
     Social Security,                              Noted for December 15, 2006
14
                    Defendant.
15

16

17

18

19        This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for judicial

20   review of the denial of her applications for disability insurance benefits. (Dkt. #8).  This matter has been

21   referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates

22   Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).

23   After reviewing defendant's motion, plaintiff's response to that motion,[1] and the remaining record, the

24   undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's

25   review.

26                        FACTUAL AND PROCEDURAL BACKGROUND

27        On June 27, 1980, plaintiff filed an application for disability insurance benefits. See Declaration of

28   _____
          [1]Defendant has chosen not to file a reply to plaintiff's response.

REPORT AND RECOMMENDATION
Page - 1

A. Yvette Dunaway, Exhibit 3, p. 3 (Dkt. #8-5).  On July 31, 1980, plaintiff also  filed an application for supplemental security income ("SSI") benefits, which was consolidated with her disability insurance benefits application. Id.  The latter application was denied initially and on reconsideration because "she was found 'not disabled' before or on March 30, 1975, her date last insured." Id.  The SSI application also was denied "due to excess resources." Id.

Plaintiff again filed applications for disability insurance and SSI benefits on April 23, 1981. Id.  This time, both applications were denied initially and on reconsideration. Id.  Her request for a hearing was dismissed, and she apparently "took no further action to pursue" those claims. Id.  Plaintiff filed a third set of applications on March 15, 1984, which were denied initially on April 17, 1984. Id.  She did not pursue any further appeal of these denials. Id.

Plaintiff filed a fourth application for SSI benefits on August 8, 1985. Id.  This time, she was found disabled as of the date of that application. Id.  Due to an inheritance "which yielded excessive income and resources," however, she ceased receiving SSI benefits in November 1997. Id.

On November 18, 1999, plaintiff submitted a written request that her June 27, 1980 application for disability insurance benefits be re-opened. Id.  However, she was advised that her request should be in the form of a request for hearing, even though such a request would be 19 years late. Id.  On January 30, 2000, plaintiff filed such a request, asking both that her June 27, 1980 application be re-opened and that her late hearing request be allowed, which an administrative law judge ("ALJ") denied on May 3, 2000. Id.

On June 2, 2004, the Appeals Council granted plaintiff's request for review, and remanded the matter back to the same ALJ to provide her the opportunity for a new hearing and decision, because the administrative record could not be located. Id.  Efforts to reconstruct the record, however, eventually were successful. Id. at pp. 3-4.  As a result, the ALJ determined once more that plaintiff's request for a hearing should be dismissed. Id. at p. 4.

In so deciding, the ALJ found no "good cause" for re-opening plaintiff's June 27, 1980 application pursuant to 20 C.F.R. § 404.987 through 20 C.F.R. § 404.989, which "provide, in part, that a decision or determination, which has become final and binding may be reopened within four years of the notice of the initial determination if there is good cause for doing so." Id.  The ALJ also rejected plaintiff's argument that the June 27, 1980 application should be re-opened because the notice she received following the initial

1   denial of that application was defective, and therefore violated her due process rights. Id. at pp. 4-5.

2   Specifically, the ALJ found that such notice "did not prejudice her benefits insomuch as she appealed the

3   initial denial to the reconsideration level." Id. at p. 5.

4       The ALJ rejected plaintiff's second argument for re-opening her June 27, 1980 application for the

5   following reasons as well:

> Counsel's second argument for reopening is based on Social Security Ruling 91-5p
> (SSR 91-5p).  The Ruling allows for reopening a prior determination when the claimant
> presents evidence that mental incapacity prevented timely filing of the request for review
> of an adverse determination and the claimant was not represented.  While the evidence
> shows that Ms. Meyers was unrepresented when she filed her 1980 application, there is
> no evidence that she lacked the mental capacity to pursue appeal.  In fact, the evidence
> shows that she timely requested reconsideration in regards to her 1980 application and
> timely appealed her 1981 determination to the hearing level.  At the time of the 1980
> application, Ms. Meyers handled her own affairs and cared for her three children.  A
> 1981 report shows her mental condition was well stabilized and her mental illness was in
> remission.  Based on the evidence, I find no basis for reopening the 1980 determination
> under SSR 91-5p.

Id.  Accordingly, because plaintiff's request for a hearing involved "the rights of the same claimant on the

same facts and on the same issues which were decided in the final and binding determination made on the

1980 application," the ALJ denied that request on the basis of administrative res judicata. Id.

In her motion to dismiss, defendant argues that because the ALJ dismissed plaintiff's June 27, 1980

application for disability insurance benefits without a hearing on the basis of administrative res judicata, no

final decision after a hearing was issued.  Defendant further argues that because plaintiff has not alleged a

colorable constitutional claim, this Court has no subject-matter jurisdiction to review the Commissioner's

finding of res judicata.  Plaintiff asserts that she has asserted a colorable constitutional claim, and that the

circumstances of this case warrant a remand to the Commissioner – and, in addition, to a new ALJ – to re-

open and re-consider not only her June 27, 1980 application, but her April 23, 1981 and March 15, 1984

applications for disability insurance benefits as well.

For the reasons set forth below, the undersigned finds that no final decision after a hearing was

issued by the Commissioner with respect to any of the applications for disability insurance benefits plaintiff

filed prior to 1985.  The undersigned further finds that the record reveals plaintiff has alleged colorable

constitutional claims with respect to the denials of each of those applications.  The undersigned thus

recommends that defendant's motion to dismiss plaintiff's complaint for judicial review be denied, and that

this matter be remanded to the Commissioner to re-open and re-consider those applications in accordance

with the findings contained herein.

DISCUSSION

I.      Standard of Review

Judicial review of the Commissioner's administrative decisions is governed by Section 405(g) of the Social Security Act, which reads in relevant part:

> Any individual, after any *final decision* of the Commissioner of Social Security *made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C. § 405(g) (emphasis added); see also Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited to final decision made after hearing).

The Commissioner may apply administrative *res judicata* "to bar reconsideration of a period with respect to which she has already made a determination, by declining to reopen the prior application." Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996).  In general, the Commissioner's refusal to reopen a decision regarding an earlier period "is not subject to judicial review." Id.  This is because, once an administrative decision becomes final, the Commissioner's decision to reopen a disability claim is "purely discretionary." Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985).  Further, since a discretionary decision is not a "final decision" within the meaning of 42 U.S.C. § 405(g), the Commissioner's refusal to reopen that decision "is not a 'final' decision subject to judicial review." Id. (citations omitted).

Neither party disputes that the ALJ's decision to dismiss plaintiff's request for a hearing to re-open her June 27, 1980 application without a hearing was a discretionary decision, and thus was not a "final decision" within the meaning of 42 U.S.C. § 405(g).  Nor does either party dispute that the denial of this application, as well as the denials of plaintiff's April 23, 1981 and March 15, 1984 applications, without a hearing also was not a "final decision."  As noted above, however, the parties do dispute whether this case fits into the exception to the above rule barring judicial review, "'where the [Commissioner's] denial of a petition to reopen is challenged on constitutional grounds.'" Udd, 245 F.3d at 1096.

This constitutional grounds exception "applies to any colorable constitutional claim of due process violation that 'implicate[s] a due process right [either] to a meaningful opportunity to be heard' . . . or to seek reconsideration of an adverse benefits determination." Id.; Evans v. Chater, 110 F.3d 1480, 1483 (9th

1  Cir. 1997) (citation omitted).

2      A constitutional challenge "that is not 'wholly insubstantial, immaterial, or frivolous' raises a

3  colorable constitutional claim." Udd, 245 F.3d at 1099 (citation omitted).  On the other hand, "[s]imply

4  couching in constitutional language what is in reality an argument" that the Commissioner abused her

5  "discretion in refusing to re-open a claim, does not convert the argument into a colorable constitutional

6  challenge." Ingram v. Secretary of Health and Human Services, 830 F.2d 67 (6th Cir. 1987); see also Davis

7  v. Schweiker, 665 F.2d 934, 936 (9th Cir. 1982) (finding constitutional allegation that was purely

8  discretionary and unsupported by facts to be insufficient).  The standard for asserting such a challenge,

9  however, is not particularly high. See Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (because

10 claimant claimed he lost benefits because he was denied due process, and cited arguably relevant case law in

11 support of his due process claim, he satisfied this standard).

12 II.   Plaintiff's Claim Under Gonzalez v. Sullivan and Acquiescence Ruling 92-7(9)

13     In Gonzalez v. Sullivan, 914 F.2d 1197 (9th Cir. 1990), the Ninth Circuit found that the language

14 contained in the Commissioner's "initial notice of an adverse decision" used at the time did "not clearly

15 indicate that if no request for reconsideration is made, the determination is final," and thus violated the

16 claimant's due process right to notice "reasonably calculated to afford" the "right to present objections."

17 Id., 914 F.2d at 1203.  The particular language at issue read:

18         If you believe that this determination is not correct, you may request that your case be
           reexamined.  If you want this reconsideration, you must request it not later than 60 days
19         from the date you receive this notice.  You may make your request through any social
           security office.  If additional evidence is available, you should submit it with your
20         request.  Please read the enclosed leaflet for a full explanation of your right to question
           the determination made on your claim.
21
           If you do not request reconsideration of your case within the prescribed time period, you
22         still have the right to file another application at any time.

23 Id.  The Court of Appeals further found "the form of the notice used" to be "sufficiently misleading that it"

24 introduced "a high risk of error into the disability decsionmaking process." Id.

25     In response to the Ninth Circuit's decision in Gonzalez, the Commissioner issued Acquiescence

26 Ruling ("AR") 92-7(9), which states in relevant part as follows:

27         A new determination based on the merits of the claim must be issued and a notice of the
           determination must be sent to the claimant . . . if:
28
                •      the claimant received a notice like that received by Mr. Gonzalez . . . ;

REPORT AND RECOMMENDATION
Page - 5

and
- the claimant files a subsequent application; and
- the claimant either requests reopening of the prior initial determination or requests some or all of the benefits claimed in the prior application.

For purposes of this Ruling, the time limits for reopening and revising final agency determinations do not apply.

1992 WL 381003 *2-*3.  In addition, AR 92-7(9) expressly states that it "applies only to cases involving claimants who: . . . (2) received an adverse initial determination made prior to July 1, 1991; and (3) did not timely appeal that determination." Id. at *2.

In his decision, the ALJ found that plaintiff "received the defective 'Gonzalez' notice following the initial denial made pursuant to her 1980 application for benefits." Dunaway Declaration, Exhibit 3, p. 5.  As noted above, however, the ALJ also found that "[t]he 'Gonzalez' notice did not prejudice her benefits insomuch as she appealed the initial denial to the reconsideration level." Id.  Accordingly, the ALJ declined to re-open plaintiff's June 17, 1980 application on that ground. Id.

Plaintiff asserts the ALJ erred by narrowly construing Gonzalez and AR 92-7(9) "to only apply to initial denials but not denials on reconsideration." Plaintiff's Brief in Opposition of Defendant's Motion to Dismiss ("Plaintiff's Brief"), p. 6.  Rather, plaintiff argues that because both the initial and reconsideration denial notices she received with respect to her June 27, 1980 and April 23, 1981 applications "contained identical language," and because "[t]his was true in all" such "notices up until 1989," including in regard to her March 15, 1984 application, the same due process violations occurred in regard to all such notices she received with respect to each of the applications she filed prior to 1985. Id.

While AR 92-7(9) was promulgated by the Commissioner specifically in response to the Gonzalez decision, and thus focuses primarily on the issue of defective initial denial notices, its applicability is not necessarily limited to such notices.  It is true that the specific issue with which that ruling is concerned is "[w]hether an initial determination" must be re-opened "when the notice of the initial determination did not explicitly state that the failure to seek reconsideration results in a final determination." 1992 WL 381003 *1. It also is true that AR 92-7(9) states that it "applies only to cases involving claimants who . . . received an adverse initial determination," and that a new determination based on the merits of the claim is to be issued if the claimant received a notice like that received by the claimant in Gonzalez, and requests a re-opening of that "prior initial determination." Id. at *2-*3.

On the other hand, AR 92-7(9) does further allow a new determination based on the merits to be made if the claimant in the alternative merely requests "some or all of the benefits claimed in the prior application." Id. at *3.  In addition, it is possible to read the requirement that the claimant first receive an initial denial notice, and not have timely appealed that denial, as also encompassing those claimants who both received the initial denial notice and a reconsideration denial notice and did not timely appeal.  In other words, the language of AR 92-7(9) does not necessarily exclude application of the ruling to defective reconsideration denial notices.

Indeed, that ruling specifically refers to notices "like that received by the claimant Mr. Gonzalez." Id. at *3 (emphasis added).  The Commissioner, furthermore, on at least one occasion "all but conceded AR 92-7(9)" applied to the reconsideration denial notice in that case. Id. at *3 (emphasis added); Ratto v. Secretary, Dept. of Health and Human Serv., 839 F.Supp. 1415, 1424 (D.Or. 1993).  It was later noted by the same district court in another case that "interpretation of AR 92-7(9) by various courts does not limit this Ruling to the initial denial notice received by an applicant." Delyria v. Shalala, 856 F.Supp. 1432, 1439 (D.Or. 1994) (citing Robinson v. Shalala, 1994 WL 119355 (S.D.N.Y. 1994)).

In addition, while the facts of Gonzalez specifically concerned receipt of an initial denial notice, in finding that particular notice to be constitutionally defective, the Ninth Circuit noted that district courts also had "uniformly held" that this type of notice form violated a claimant's "right to procedural due process." Gonzalez, 914 F.2d at 1203.  In one case cited by the Court of Appeals, Butland v. Bowen, 673 F.Supp. 638 (D.Mass. 1987), the district court noted as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calaculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  The notice must be of such nature as reasonably to convey the required information.

Id. at 642 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  That court also quoted Dealy v. Heckler, 616 F.Supp. 880, 886 (W.D.Mo. 1984), in which the district court in that case stated that "[s]imply put," the Commissioner "has an affirmative obligation to avoid providing Social Security applicants with misleading information." Butland, 673 F.Supp. at 642.

The district court in Dealy, which also was cited to by the Ninth Circuit in Gonzalez, dealt with the following language contained in the reconsideration denial notice sent to the plaintiff:

If you believe that the reconsideration determination is not correct, you may request a

hearing before the Administrative Law Judge of the Bureau of Hearings and Appeals.  If you want a hearing, you must request it not later than 60 days from the date you receive this notice.  Read the enclosed leaflet BHA-1 for a full explanation of your right to appeal.

If you do not request a hearing within the prescribed time period, you still have the right to file another application at any time.

616 F. Supp. at 881.  In finding this language to be constitutionally deficient, the district court stated that "[n]otice should be 'tailored to the capacities and circumstances' of their intended recipients," and that "[a]dequate notice requires accuracy in the description of legal rights and options available to parties."  Id. at 886 (citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 1021 (1970)).  It concluded as follows:

> [T]he plaintiff, proceeding without counsel and unaware of the doctrine of administrative res judicata, chose not to request a hearing or pursue an appeal of the denial of her initial application for disability benefits.  In making this decision, the plaintiff relied on the Secretary's notice that she had "the right to file another application at any time."  The essential due process issue involved is whether the Secretary has an affirmative obligation to avoid providing Social Security applicants with misleading information.  Clearly that duty exists.

Id.

In Christopher v. Secretary of Health and Human Serv., 702 F.Supp. 41 (N.D.N.Y. 1989), another case which dealt with a reconsideration denial notice and cited to by the Ninth Circuit in Gonzalez, the district court noted with approval the Butland court's statement that the Commissioner had "an affirmative duty to avoid providing applicants with misleading information, especially when the applicant was 'without counsel at the time of her'" application and "'relied on the plain language in her denial notice.'"  Christopher, 702 F.Supp. at 43 (quoting 673 F.Supp. at 642).  The Christopher court went on to note the similarity between its case in hand and the plaintiff's situation in Butland:

> [I]n specific, she too did not have the assistance of counsel when reviewing the notice of denial of reconsideration.  From reading the notice, she could have reasonably expected that declining to continue the appeals process would not have an impact on benefit determinations made in the future.

Id.

At least one other circuit court of appeals, furthermore, has relied on the Ninth Circuit's decision in Gonzalez to find that the disability insurance benefits "reconsideration denial notices used before February, 1990, failed to satisfy the requirements of due process."  Day v. Shalala, 23 F.3d 1052, 1065-66 (6th Cir. 1994).  The Sixth Circuit went on to state, however, that to be injured by the inadequacy of such a notice, a claimant must have "detrimentally relied" on it, and that a claimant will have "relied to his or her detriment

on the inadequate notice if he or she:

> [W]as denied benefits at the reconsideration level then received the inadequate notice, and thereafter filed a new application rather than continuing the appeal process, and then were presented by the Secretary with a claim of *res judicata* or received less in retroactive benefits than he or she would have had they successfully appealed initially.

Id. at 1066; see also Delyria, 856 F.Supp. at 1439 (finding claimant detrimentally relied on constitutionally inadequate reconsideration denial notice as defined in Day).

Although the record before the Court in this case does not contain copies of any of the denial of benefits notices, initial or reconsideration, plaintiff received, as noted above, the ALJ did find at least that she "received the defective 'Gonzalez' notice following the denial made pursuant to her 1980 application for benefits." Dunaway Declaration, Exhibit 3, pp. 4-5. Also as noted above, plaintiff asserts in her brief opposing defendant's motion that all of the initial denial notices she received with respect to her June 27, 1980, April 23, 1981 and March 15, 1984 applications, and each of the reconsideration denial notices she received with respect to her first two applications, contained the same constitutionally inadequate language. Specifically, plaintiff states that "[e]ach of the denial notices advised" her "that she could either appeal or file a new application 'at any time.'" Plaintiff's Brief, p. 6.

Because defendant has not disputed plaintiff's assertion in this regard, the undersigned presumes all such benefits denial notices indeed contained the identically deficient language. The undersigned further finds that plaintiff detrimentally relied on the constitutionally inadequate reconsideration denial notice she received with respect to her June 27, 1980 application, and the similarly constitutionally inadequate initial denial notice she received with respect to her March 15, 1984 application. This is because after each such denial, she thereafter filed a new application rather than continuing the administrative appeal process, and then was presented by the Commissioner with a claim of *res judicata*. Day, 23 F.3d at 1066. In addition, plaintiff was unrepresented at the time she filed her June 27, 1980 application, and there is no indication in the record that she subsequently obtained representation when she filed her March 15, 1984 application. Dunaway Declaration, Exhibit 3, p. 5.

In regard to her April 23, 1981 application for disability insurance benefits, however, the record shows that after it was denied initially and on reconsideration, plaintiff requested a hearing. Dunaway Declaration, Exhibit 3, p. 3. While that request was dismissed, and although plaintiff "took no further action to pursue this claim" except to file a new application on March 15, 1984, there is no indication that

the dismissal of her April 23, 1981 application was because she had failed to pursue an appeal of her June 17, 1980 application. Id. In other words, because plaintiff chose to continue with the administrative appeal process at least to the point of requesting a hearing on the April 23, 1981 application, albeit unsuccessfully, rather than file a new application at that time, the undersigned finds she did not detrimentally rely on the defective reconsideration notice she received.

Accordingly, the undersigned finds plaintiff has asserted a colorable constitutional claim pursuant to the Ninth Circuit's decision in Gonzalez and AR 92-7(9) with respect to denials of her June 27, 1980, April 23, 1981 and March 15, 1984 applications for disability insurance benefits. Further, with respect to her June 27, 1980 and March 15, 1984 applications, the undersigned finds that plaintiff's procedural due process rights were violated because she relied to her detriment on the defective denial notices she received in regard to them. Because she pursued further administrative appeal of her April 23, 1981 application, however, the undersigned finds plaintiff did not detrimentally rely on the initial denial notice she received for that application, and thus no due process violation occurred with respect thereto.

III.    Plaintiff's Claim Under Social Security Ruling 91-5p

A constitutional claim is colorable where the claimant "alleges that a prior determination should be reopened because he suffered from a mental impairment and was not represented by counsel at the time of the denial of benefits." Udd, 245 F.3d at 1099 (noting though that lack of representation is not required to state colorable constitutional claim). Thus, where a claimant "lacked the requisite mental capacity at the time of the adverse benefits decision," the denial or termination of benefits "constitutes a due process violation." Id. at 1100 (citing Evans, 110 F.3d at 1483). This is because, "[i]t is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied." Id. at 1099 (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).

To clarify its policy on "establishing good cause for missing the deadline to request" administrative review of the denial of a disability benefits application, and to "avoid the improper application of res judicata or administrative finality" when the evidence in the record "establishes that a claimant lacked the mental capacity to understand the procedures for requesting review," the Commissioner issued Social Security Ruling ("SSR") 91-5p 1995 WL 208067 *1. Specifically, SSR 91-5p reads in relevant part:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . and the claimant had no one

REPORT AND RECOMMENDATION
Page - 10

legally responsible for prosecuting the claim (e.g., . . . legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review.  If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.

In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
--inability to read or write;
--lack of facility with the English language;
--limited education;
--any mental or physical condition which limits the claimant's ability to do things for him/herself.

If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. The adjudicator will resolve any reasonable doubt in favor of the claimant.

If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take the action which would have been appropriate had the claimant filed a timely request for review. A finding of good cause will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for a reason other than late filing) of the request for review, as appropriate.

Id. at *2.  A decision made pursuant to SSR 91-5p is reviewed "under the substantial evidence standard to determine whether the claimant lacked the requisite capacity at the time of the adverse benefits decision." Udd, 245 F.3d at 1100.  If substantial evidence does not support a determination that the claimant had the requisite capacity, "the termination of his [or her] benefits constitutes a due process violation." Id.; see also Evans, 110 F.3d at 1483 (no violation if substantial evidence supports SSR 91-5p determination).

Where a claimant had no legal representation at the time of the decision, "it is the mental capacity of the claimant that determines whether the requirements of due process have been fulfilled." Udd, 245 F.3d at 1100 n.4.  The mental impairment, however, need not "'totally incapacitate' the claimant, but merely . . . 'limit [his] [or her] ability to do things for him/herself.'" Id. at 1101.  In addition, the SSR 91-5p determination "must be reversed where the ALJ fails to resolve any reasonable doubt in the claimant's favor." Id. (citing Hill v. Callahan, 962 F.Supp. 1341, 1346 (D.Or. 1997) (finding that due process required reopening because there was reasonable doubt claimant had mental capacity to understand procedures for

1    requesting review)).

2       As discussed above, plaintiff was not represented when she filed her June 27, 1980 application, and

3    there is no indication in the record, nor does defendant argue otherwise, that she was represented when she

4    filed her subsequent April 23, 1981 and March 15, 1984 applications as well.  Also as noted above,

5    however, the ALJ found "no evidence that she lacked the mental capacity to pursue appeal" of her June 27,

6    1980 application.  The ALJ went on to find as follows:

7       In fact, the evidence shows that she timely requested reconsideration in regards to her
       1980 application and timely appealed her 1981 determination to the hearing level.  At
8       the time of her 1980 application, Ms. Meyers handled her own affairs and cared for her
       three children.  A 1981 report shows her mental condition was well stabilized and her
9       mental illness was in remission.

10    Dunaway Declaration, Exhibit 3, p. 5.  Accordingly, the ALJ found "no basis for reopening" plaintiff's June

11    27, 1980 application under SSR 91-5p. Id.

12       Plaintiff argues she was denied due process by the ALJ's failure to permit a hearing to be held as to

13    whether the evidence shows she met the requirements of SSR 91-5p to re-open each of the applications she

14    submitted prior to 1985.  Because, as plaintiff points out, the ALJ made no specific citations to evidence in

15    the record, it is difficult to know exactly what evidence the ALJ considered in making his findings.  Indeed,

16    the medical evidence plaintiff has submitted to the Court, which is discussed below, indicates plaintiff's

17    psychological impairments likely had a far more significant impact on her mental capacity than found by the

18    ALJ.  As such, and resolving all reasonable doubts in favor of plaintiff, the undersigned finds that plaintiff

19    lacked the requisite mental capacity to understand the procedures for requesting review, at least with

20    respect to her June 27, 1980 and April 23, 1981 applications.

21       The medical evidence plaintiff submitted shows that by the time she filed her June 27, 1980

22    application, she had been suffering from a significant mental impairment for at least as far back as 1968.

23    That year, she was hospitalized for three months for depression and paranoid thoughts with a diagnosis of

24    chronic schizophrenia. (Dkt. #11-3), p. 4; (Dkt. #11-4), pp. 11-15.  While she apparently "did well" for

25    "about a year" thereafter, she was re-hospitalized in early May 1970, because of "progressive withdrawal"

26    and "progressive increase in suspiciousness," and again was diagnosed with chronic schizophrenia. (Dkt.

27    #11-3), pp. 4-5.  She eventually was discharged in early September 1970. Id. at p. 7.

28       In mid-October 1972, plaintiff was brought to the emergency room as a result of an "acute episode"

involving her chronic schizophrenia. Id. at p. 13.  In early May 1980, she was committed by order of court to a state mental health hospital for a psychotic episode, manifested by withdrawal and negativism and an alleged threat and act of violence toward her mother. (Dkt. #11-4), p. 1.  She was diagnosed with chronic schizophrenia and given a guarded prognosis. Id.  Twelve days later, plaintiff was found to be "still too hostile and psychotic to give any information." Id. at p. 3.

It was noted at the time that plaintiff had "functioned well enough to stay out of the hospital" for a substantial number of years, but had "not been able to hold employment." Id. at p. 4.  It also was noted that while plaintiff had three children and that she had "fairly regular contact" with them, they continued to live with her ex-husband, except for one who lived on his own. Id. at p. 3.  Plaintiff remained in the hospital until she was discharged to return to her mother's house on June 25, 1980, just two days before she filed her first application for disability insurance benefits. Id. at pp. 3-8.  She was noted to be "[m]uch improved psychologically" at the time. Id. at pp. 3-8.

In his decision, the ALJ found "no evidence" that plaintiff "lacked the mental capacity to pursue appeal," because she "timely requested reconsideration in regards to her 1980 application and timely appealed her 1981 determination to the hearing level." Dunaway Declaration, Exhibit 3, p. 5.  The claimed mental impairment though need not "'totally incapacitate' the claimant, but merely . . . 'limit [his] [or her] ability to do things for him/herself.'" Udd, 245 F.3d at 1101 (quoting Social Security Ruling 91-5p).  Thus, the mere fact that plaintiff filed a request for reconsideration in 1980 and an administrative appeal a year later, does not alone necessarily mean that she did not lack "the mental capacity" to fully "understand the procedures for requesting review. SSR 91-5p, 1995 WL 208067 *2.

The ALJ further found that at the time of her June 27, 1980 application, plaintiff "handled her own affairs and cared for her three children." Dunaway Declaration, Exhibit 3, p. 5.  This is difficult to believe, however, considering that she had been court committed to a state mental health hospital for the nearly two months immediately preceding the filing of that application.  Indeed, while plaintiff had three children, the medical evidence she has submitted shows they were either living with her ex-husband at the time or were living on their own.  Accordingly, the undersigned finds this reason for determining she had the mental capacity to pursue appeal to be unsupported by substantial evidence.

Finally, the ALJ relies on a 1981 report that he found showed her mental condition to be "well

stabilized and her mental illness" to be "in remission." Id.  The report the ALJ likely is referring to here is one written by Dr. David A. Pollack in late February 1981.  In that report, Dr. Pollack stated that plaintiff had "been subjected to marked restrictions of her daily activities and" was "significantly impaired." (Dkt. #11-3), p. 18.  He noted that she appeared "somewhat withdrawn and blunt in her affect most of the time," and that there was "substantial evidence to support the notion that she has had delusional thinking in the past and disorganized and even bizarre behavior in the past." Id.

With respect to the specific opinion to which the ALJ pointed, Dr. Pollack's complete comment reads as follows:

> Currently, she is well-stabilized on medication and her illness seems to be in remission. However, I do not believe that she is functional enough to maintain employment.  She appears to be markedly sensitive to stress, unable to perform routine tasks on a regular basis, and is very restrictive in her interpersonal relating skills.  This disability, I believe, is most likely permanent and has been present for the past 14 years off and on and is likely to persist for most of the rest of her life.

Id. (emphasis added).  As can be seen, the ALJ took Dr. Pollack's comment that plaintiff's illness seemed to be in remission at the time entirely out of context.  In particular, the undersigned notes Dr. Pollack's statement that plaintiff at the time appeared to be "unable to perform routine tasks on a regular basis," and that this, as well as her other, limitations both were disabling and likely to remain that way permanently. See Udd, 245 F.3d at 1101; SSR 91-5p, 1995 WL 208067 *2 (in determining whether claimant lacked mental capacity to understand procedures for requesting review, adjudicator must consider any mental or physical condition that limits his or her ability to do things for himself or herself).

While Dr. Pollack does not expressly state that plaintiff lacked the mental capacity to understand the procedures for requesting administrative review, his comments at the very least call into great doubt her ability to do so just two months prior to the filing of her April 23, 1981 application.  In addition, as noted above, although plaintiff was noted to be much improved psychologically upon her discharge from the hospital, there is no indication that she had improved sufficiently enough to do things for herself, and the discharge itself occurred a mere two days prior to the filing of her June 27, 1980 application.  That is, with respect to these two applications, it is hardly clear she possessed the requisite mental capacity.

Accordingly, the undersigned finds the ALJ failed to resolve all reasonable doubts in plaintiff's favor and that the substantial evidence in the record before the Court shows that she lacked the mental capacity at

1  the time she filed her June 27, 1980 and April 23, 1981 applications for disability insurance benefits to
2  understand the procedures for requesting review.  On the other hand, the record is devoid of any evidence
3  that she lacked the requisite mental capacity at the time she filed her March 15, 1984 application.  That is,
4  while Dr. Pollack in late February did opine that he felt plaintiff's impairments were "likely" to be
5  permanent, there is no follow-up medical documentation to show that this remained to be the case.  Given
6  this lack of documented evidence, the undersigned cannot say she continued to lack the requisite mental
7  capacity some nearly three years later.

8  IV.    Plaintiff's Request for Remand to a New Administrative Law Judge

9         In addition to requesting remand of this case, plaintiff also requests that this Court order the remand
10 be made to a new ALJ.  She asserts that because the ALJ in this case already has adjudicated her claims
11 twice in this matter, an appropriate remedy requires his replacement with a different ALJ.  However, while
12 the undersigned has found the ALJ erred in refusing to re-open plaintiff's prior applications as discussed
13 herein, nothing in the record, other than the fact that he has issued two adverse decisions in this matter,
14 casts any doubt on the ALJ's impartiality or general fitness to adjudicate plaintiff's case.  That is, plaintiff
15 has not alleged any bias or other impropriety on his part, nor does the record reveal any.  Accordingly, the
16 undersigned does not, and the Court should not, grant this particular request.

17                                     CONCLUSION

18        Based on the foregoing discussion, the Court should deny defendant's motion to dismiss (Dkt. #8),
19 should find plaintiff's due process rights were violated as explained herein, and should remand this matter to
20 the Commissioner to re-open and reconsider plaintiff's June 27, 1980, April 23, 1981 and March 15, 1984
21 applications for disability insurance benefits.

22        Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
23 the parties shall have ten (10) days from service of this Report and Recommendation to file written
24 objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those
25 objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit
26 imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 15,**
27
28

REPORT AND RECOMMENDATION
Page - 15

1  **2006**, as noted in the caption.

2      DATED this 17th day of November, 2006.

3

4

5                                    Karen L. Strombom
                                     United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 16